# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JASON ALTHEIDE,

                       Plaintiff,

  v.

JAMES DZURENDA, *et al.,*

                       Defendants.

Case No. 3:18-cv-00408-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

This case involves a civil rights action filed by Plaintiff Jason Altheide ("Altheide") against Defendants George Davis ("Davis"), William Gittere ("Gittere"), Dennis Homan ("Homan"), William Moore ("Moore"), William Reubart ("Reubart"), John Schmidt ("Schmidt"), and Harold Wickham ("Wickham") (collectively referred to as "Defendants"). Currently pending before the court is Altheide's motion for summary judgment (ECF Nos. 78, 79).[2]  Defendants responded (ECF No. 85) and Altheide replied (ECF No. 90). Subsequently, Defendants moved for summary judgment. (*See* ECF Nos. 93, 95).[3] Altheide responded (ECF No. 104), and Defendants replied (ECF No. 108).  Having thoroughly reviewed the record and papers, the court recommends Altheide's motion for summary judgment (ECF No. 78) be denied and Defendants' motion for summary judgment (ECF No. 93) be granted.[4]

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 79 is Altheide's supplement to his motion for summary judgment (ECF No. 78).

[3]    ECF No. 95 consists of sealed exhibits filed in support of Defendants' motion for summary judgment (ECF No. 93).

[4]    Altheide filed a motion to exclude video (ECF No. 92), a motion to dismiss Defendants' motion for summary judgment (ECF No. 99), a motion for an order to produce (ECF No. 105), and three motions of notice (ECF Nos. 110, 111, and 115).  Because

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   BACKGROUND AND PROCEDURAL HISTORY

Altheide is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC"), housed at the High Desert State Prison ("HDSP").  (*See* ECF No. 49, Altheide's Change of Address).  The events in question occurred on November 8, 2017, while Altheide was housed at the Ely State Prison ("ESP").  (*See* ECF No. 15 at 1).  On June 24, 2019, proceeding *pro se*, Altheide submitted his Third Amended Complaint ("TAC") pursuant to 42 U.S.C. § 1983, which he signed and verified, under penalty of perjury, acknowledging the facts and information contained in the complaint were "true and correct."  (*Id.* at 21).

Pursuant to 28 U.S.C. § 1915A(a), the court screened Altheide's TAC on July 5, 2019, and allowed Altheide to proceed on the following Counts: Count I, alleging an administrative segregation due process claim against Moore and Reubart; Count II, alleging a deprivation of property due process claim against Reubart and Schmidt; Count III, alleging an Eighth Amendment violation against Moore; Count V, alleging an excessive force claim against Davis and Gittere; Count VI, alleging an administrative segregation due process claim against Gittere and Reubart; Count VII, alleging a disciplinary segregation due process claim against Homan and Wickham; and Count VIII, alleging an Eighth Amendment violation against Reubart.  (ECF No. 18 at 11).

### A.   Altheide's TAC Allegations

Altheide's TAC, in relevant part, alleges the following: First, Altheide alleges Moore and Reubart removed his disciplinary segregation status and reclassified him to administrative segregation and continued prohibited housing without a hearing.  (ECF No. 15 at 6).  Altheide alleges it was Moore's responsibility to hold a hearing and classify him based on facts.  (*Id.*)  Altheide claims he was denied mental health unit freedoms to which he would have been entitled were he properly classified.  (*Id.*)

---

Defendants are entitled to summary judgment, Altheide's additional motions are denied as moot.

1     Second, Altheide alleges Reubart and Schmidt denied grievances related to a
2  seizure of non-contraband property from Altheide's cell on July 18, 2018, (*Id.* at 7).
3  Altheide further alleges that after the property was not returned, he properly grieved the
4  issue, but Reubart and Schmidt "refused/denied restoration of property" by denying his
5  grievances. (*Id.*)

6     Third, Altheide alleges Moore ignored NDOC regulations prohibiting the
7  disciplinary segregation of seriously mentally ill inmates. (*Id.* at 8). Altheide alleges, after
8  informing Moore he was classified as mentally ill, Moore nonetheless put him in the most
9  severely isolated housing unit available. (*Id.*) Altheide alleges Moore's conduct was
10 prohibited and amounts to cruel and unusual punishment. (*Id.*)

11     Fourth, Altheide alleges Davis and Gittere used excessive force against him on
12 April 1, 2019. (*Id.* at 11). Altheide alleges that after a brief conversation about the
13 illegality of his sentence, Warden Gittere ended the conversation, then "stepped forward
14 and attacked" Altheide. (*Id.*) Gittere "was immediately supported with backup by Davis",
15 causing Altheide back and shoulder problems. (*Id.*)

16     Fifth, Altheide alleges Gittere and Reubart violated his due process rights when
17 Reubart determined he should be placed in administrative segregation because of the
18 April 1, 2019 incident and Gittere ignored his subsequent grievances. (*Id.* at 13). Altheide
19 alleges he was denied access to written material and witnesses prior to his April 3, 2019
20 hearing, including witness Defendant Davis. (*Id.*) Altheide alleges the results of the
21 hearing negatively impacted his circumstances but Gittere did not correct the defects in
22 his hearing even after being notified. (*Id.*)

23     Sixth, Altheide alleges Homan and Wickham violated his due process rights when
24 Homan conducted a discipline hearing on May 2, 2019 and Wickham denied his
25 subsequent grievance. (*Id.* at 15-16). Altheide alleges Homan denied his request to have
26 witness Defendant Davis (the "charging employee") testify at the hearing in violation of
27 NDOC regulations. (*Id.* at 15). Altheide claims he was prejudiced at the hearing by the
28 failure to have Davis present because Davis' report was used to find Altheide should be

1    placed in administrative segregation.  (*Id.*)  Altheide alleges video evidence shows Gittere

2    was the aggressor in the April 1, 2019 incident.  (*Id.*)  Altheide alleges Homan conducted

3    a sham disciplinary hearing because he was already placed in administrative segregation

4    prior to the hearing.  (*Id.* at 16).

5          Seventh, Altheide alleges Reubart condemned "a psychoticly (sic) diagnosed and

6    treated mentally ill patient to be housed in 23 hour a day segregational (sic) lockdown" in

7    violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  (*Id.* at

8    17-18).  Altheide alleges a psych assessment showed he was not a danger to safety or

9    security as of April 23, 2019.  (*Id.* at 17).  Altheide further alleges "sensory deprivation

10   exacerbates psychotic symptoms", citing *Graves v. Arpaio*, F.Supp.3d 1318 (D. Ariz.

11   2014).  (*Id.* at 17-18).

12         **B.**    **Competing Motions for Summary Judgment**

13         On June 6, 2020, Altheide filed a motion for summary judgment (ECF No. 78).

14   Defendants responded (ECF No. 85) and Altheide replied (ECF No. 90).  On August 7,

15   2020, Defendants also moved for summary judgment.  (*See* ECF No. 93).  Altheide

16   responded (ECF No. 104), and Defendants replied (ECF No. 108).  The court will address

17   each motion in turn, first addressing Altheide's motion for summary judgment (ECF No.

18   78), then addressing Defendants' motion for summary judgment (ECF No. 93).  The

19   recommended disposition follows.

20   **II.    LEGAL STANDARD**

21         Summary judgment should be granted when the record demonstrates that "there

22   is no genuine issue as to any material fact and the movant is entitled to judgment as a

23   matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive

24   law will identify which facts are material.  A dispute is "genuine" only where a reasonable

25   jury could find for the nonmoving party.  *Id.*  Conclusory statements, speculative opinions,

26   pleading allegations, or other assertions uncorroborated by facts are insufficient to

27   establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

28   Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

4

Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution.  *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

1   III.    **DISCUSSION**

2          **A.    Altheide's Motion for Summary Judgment**

3          Altheide's motion for summary judgment lists his claims and what he asserts is the

4   evidence supporting his claims.  (*See* ECF No. 78).   Altheide further submitted a

5   supplement to his motion for summary judgment, directing the court to additional

6   evidence. (*See* ECF No. 79).  However, Altheide provides almost no analysis as to how

7   the evidence he lists shows that he is entitled to summary judgment on any of his claims.

8   (*Id*.)  *Pro se* pleadings should be liberally construed in favor of *pro se* litigants, including

9   the tolerance of errors or informalities in the pleadings of those litigants (prisoners in

10  particular) to ensure meaningful access to the courts.  *Rand v. Rowland*, 154 F.3d 952,

11  957-58 (9th Cir. 1998) (internal citations omitted).  Thus, despite his failure to present

12  legal arguments in favor of his motion for summary judgment, the court will attempt to

13  address Altheide's contentions on their merits.

14                  **1.    Counts I, II, VI and VII – Altheide's Due Process Claims**

15         First, the court will address Altheide's Due Process claims stated in Counts I, II, VI

16  and VII.  The Fourteenth Amendment of the United States Constitution guarantees all

17  citizens, including inmates, due process of law.  However, the Constitution protects only

18  certain interests with the guarantees of due process; an inmate's right to procedural due

19  process arises only when a constitutionally protected liberty or property interest is at

20  stake.  *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).  Such interests may arise from the

21  Constitution itself or from state law.

22         Under the Due Process Clause, an inmate does not have liberty interests related

23  to prison officials' actions that fall within "the normal limits or range of custody which the

24  conviction has authorized the State to impose."  *Sandin v. Conner,* 515 U.S. 472, 478

25  (1995) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)).  The Clause contains no

26  embedded right of an inmate to remain in a prison's general population.  *Id.* at 485–86.

27  Further, "the transfer of an inmate to less amenable and more restrictive quarters for

28  nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a

1 prison sentence." *Hewitt v. Helms,* 459 U.S. 460, 468 (1983), *overruled on other grounds*
2 *by Sandin,* 515 U.S. at 472–73. "Thus, the hardship associated with administrative
3 segregation, such as loss of recreational and rehabilitative programs or confinement to
4 one's cell for a lengthy period of time, does not violate the due process clause because
5 there is no liberty interest in remaining in the general population." *Anderson v. Cnty. of*
6 *Kern,* 45 F.3d 1310, 1315 (9th Cir. 1995). At bottom, "[o]nly the most extreme change in
7 conditions of confinement have been found to directly invoke the protections of the Due
8 Process Clause . . . ." *Chappell v. Mandeville,* 706 F.3d 1052, 1063 (9th Cir. 2013).

9      State law also may create liberty interests. Where segregated housing or other
10 prison sanctions "impose[ ] atypical and significant hardship on the inmate in relation to
11 the ordinary incidents of prison life[,]" due process protections arise. *Sandin,* 515 U.S. at
12 483–84. What matters is not the particular label or characterization of the segregation or
13 sanction, but instead, its underlying nature: "[n]o matter how a prisoner's segregation (or
14 other deprivation) is labeled by the prison or characterized by the prisoner, a court must
15 examine the substance of the alleged deprivation and determine whether it constitutes
16 an atypical and significant hardship. . . ." *Hernandez v. Cox,* 989 F.Supp.2d 1062, 1068–
17 69 (D. Nev. 2013).

18      The Due Process Clause does not afford prisoners a liberty interest in being free
19 from intrastate prison transfers, *Meachum*, 427 U.S. at 225, or in remaining in the general
20 prison population. *Hewitt*, 459 U.S. at 468; *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir.
21 1997) ("administrative segregation falls within the terms of confinement ordinarily
22 contemplated by a sentence"). In *Sandin*, the Court found that a prisoner may have a
23 liberty interest in avoiding transfer to particular conditions of confinement if the transfer
24 "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary
25 incidents of prison life." *Sandin*, 515 U.S. at 484.

26             **a.    Count I – Claim Against Moore and Reubart**

27      Altheide alleges his evidence shows Moore's knowledge of Altheide's removal
28 from disciplinary segregation, yet he never received a hearing. (ECF No. 78 at 1).

1   Altheide alleges he was supposed to have a hearing after three days in administrative

2   segregation but instead it took over a month for him to be removed from that classification.

3   (*Id.*)   Altheide further alleges, that as his caseworkers, Moore and Reubart failed to

4   conduct his hearing in a timely fashion in violation of Altheide's due process rights.  (*Id.*)

5       Defendants argue Altheide was not housed in a segregation until April of 2019; his

6   placement was periodically reviewed; and, following his altercation with Gittere and other

7   disciplinary shortcomings, Altheide was still not placed in administrative segregation

8   expressly because of his mental health issues.  (ECF No. 85 at 9-10).  In reply, Altheide

9   argues the evidence shows his close custody began on January 12, 2018, indicating from

10  November 8, 2017 through January 10, 2018 he was placed in administrative

11  segregation. (ECF No. 90 at 5).  Altheide further alleges Moore's status as a segregation

12  caseworker since late 2017 shows Altheide was placed in segregation.  (*Id.*)

13      "Typically," "administrative segregation in and of itself does not implicate a

14  protected liberty interest" under the *Sandin* factors.  *Serrano v. Francis,* 345 F.3d 1071,

15  1078 (9th Cir. 2003).  Accordingly, Altheide may prevail only by showing his conditions of

16  confinement posed an "atypical and significant hardship on [Altheide] in relation to the

17  ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  Here, Altheide alleges his

18  evidence shows he did not receive the hearing he was entitled to before being placed in

19  administrative segregation.  (ECF Nos. 78 at 1 and 79 at 1).  However, Altheide's

20  evidence shows that upon his arrival to ESP on November 9, 2017, he would be placed

21  in disciplinary segregation because of a September 6, 2017 incident at HDSP.  (ECF No.

22  79 at 3).  That classification was pursuant to a disciplinary hearing on October 2, 2017.

23  (*Id.*)  Further, his evidence shows his placement was reviewed upon his arrival at ESP on

24  November 9, 2017, and that Altheide stated "he would have no issues" in disciplinary

25  segregation.  (*Id.*)

26      Defendants' evidence also shows that Altheide was received into close custody on

27  November 8, 2017.  (ECF No. 85-5 at 2).  Defendants' evidence further establishes that

28  Altheide's bed assignment was not changed between his arrival at ESP and January 10,

1  2018.  (ECF No. 85-3 at 2).  Thus, the undisputed evidence shows Altheide was received

2  into close custody when he arrived at ESP.

3       However, even if Altheide had spent November 8, 2017 to January 10, 2018 (sixty-

4  four (64) days) in disciplinary segregation, as he claims, that would not be enough to

5  show a due process violation.  Instead, Altheide must show his conditions of confinement

6  imposed an "atypical and significant hardship on [Altheide] in relation to the ordinary

7  incidents of prison life."  *Sandin*, 515 U.S. at 484.  Altheide has made no such showing.

8  While Altheide has alleged that, generally, "sensory deprivation exacerbates psychotic

9  symptoms" (citing *Graves*, F.Supp.3d 1318; (*See* ECF Nos. 15 at 8, 17-18 and 78 at 5)),

10 Altheide has provided no evidence he actually experienced any negative psychological

11 effects from his placement.  Indeed, Altheide has provided no evidence his classification

12 imposed an "atypical and significant hardship on [Altheide] in relation to the ordinary

13 incidents of prison life."  *Sandin*, 515 U.S. at 484.  Altheide thus fails to shift his burden

14 on summary judgment to Defendants.  *See In re Oracle Corp.*, 627 F.3d at 387.

15 Accordingly, Altheide is not entitled to summary judgment on his Count I, Due Process

16 claim.

17            **b.    Count II – Claim Against Reubart and Schmidt**

18       As to Count II, Altheide alleges his evidence shows Reubart and Schmidt failed to

19 return his sweatpants after a trip to the infirmary on July 15, 2018.  (ECF No. 78 at 2).

20 Although Altheide signed for the allegedly missing property, he now claims he never

21 received the property.  (*Id.*)  Altheide alleges by denying his grievances, Reubart and

22 Schmidt deprived him of his personal property.  (*Id.*)  Defendants argue both that Altheide

23 signed acknowledging receipt of the sweatpants and Altheide further failed to exhaust his

24 administrative remedy.  (ECF No. 85 at 11-12).  In reply, Altheide argues his grievances

25 show the sweatpants were missing despite him having signed for them.  (ECF No. 90 at

26 1).

27       Property deprivation claims do not lie under the due process clause where a state

28 actor holds out an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517,

530-35 (1984) (discussing *Paratt v. Taylor*, 451 U.S. 527 (1981)).  Here, both Altheide and Defendants produced evidence showing Altheide received his sweatpants.  (See ECF Nos. 79 at 71 and 85-8 at 2-3).  Moreover, Defendants' evidence shows Altheide himself failed to pursue the remedy the prison holds out – the inmate grievance procedures.  (ECF No. 85-9 at 2-18).  Because he failed to pursue the available remedy or show such an attempt was futile, Altheide has not established a deprivation of property claim.  *See Hudson*, 468 U.S. at 530-35.  Further, the undisputed evidence shows Altheide received his sweatpants.  Accordingly, Altheide fails to shift his burden on summary judgment to Defendants on his Count II, property deprivation claim.  *See In re Oracle Corp.*, 627 F.3d at 387.  Thus, Altheide is not entitled to summary judgment on his Count II claim.

### c.      Count VI – Claim Against Gittere and Reubart

Next, with respect to Count VI Altheide alleges his evidence shows he was denied due process by Gittere and Ruebart when Reubart failed to allow witness Defendant Davis to testify at his April 3, 2019 hearing.  (ECF No. 78 at 3).  Altheide further alleges Gittere knew of yet still allowed Altheide's "prolonged segregation by subordinates." (*Id.*) Defendants argue the existence of the video made Davis' testimony particularly unnecessary because that evidence supports the decision of the disciplinary board.  (ECF No. 85 at 10-11).  In reply, Altheide argues Defendants have no material evidence to contest his claim.  (ECF No. 90 at 2).

A prisoner has no constitutional right to cross-examine witnesses in a prison disciplinary hearing.  *Wolff v. McDonnell*, 418 U.S. 539, 567-68 (1974).  Here, NDOC Administrative Regulation ("AR") 707.01(3)(C)(10)(a) is clear that the disciplinary hearing officer or committee "may deny any witness if it is felt that the testimony would be irrelevant [or] redundant . . . ."  Thus, Altheide cannot show the failure to have Davis testify at his hearing violated his right to due process.  Indeed, Davis' testimony would have been both irrelevant and redundant in light of the video evidence.  *See* AR 707.01(3)(C)(10)(a).  Further, as noted above, Altheide has no constitutional right to

1    cross-examine witnesses in a prison disciplinary hearing. *Wolff*, 418 U.S. at 567-68.

2    Accordingly, Altheide fails to show Gittere or Reubart violated his right to due process.

3    Altheide thus cannot shift his burden on summary judgment to Defendants. *See In re*

4    *Oracle Corp.*, 627 F.3d at 387. Therefore, Altheide is not entitled to summary judgment

5    on his Count VI, Due Process claim.

6                    **d.    Count VII – Claim Against Homan and Wickham**

7           Finally, as to Count VII, Altheide alleges his evidence shows Homan and Wickham

8    denied him due process during his May 2, 2019, disciplinary hearing regarding the April

9    1, 2019 incident. (ECF No. 78 at 4). Altheide alleges their claim the disciplinary

10   committee may "deny any witness", specifically witness Defendant Davis, was in

11   contravention of AR 707.01(3)(C)(10)(d). (*Id.*) Defendants argue Wickham only heard of

12   Altheide's alleged deprivation after the fact and Wickham is thus not subject to liability.

13   (ECF No. 85 at 11). Further, Defendants argue Altheide was not entitled to a witness,

14   but even if he was, he declined to request a witness. (*Id.* at 16). In reply, Altheide argues

15   the recording of the April 1, 2019 incident will prove Homan and the Attorney General

16   acted in bad faith. (ECF No. 90 at 2).

17          Although Altheide points to AR 707.01(3)(C)(10)(d), which states "the testimony of

18   the charging employee must be permitted at all Disciplinary Hearings . . . if the inmate

19   requests the charging employee as a witness," that AR must be read in tandem with AR

20   707.01(3)(C)(10)(a). AR 707.01(3)(C)(10)(a) is clear that the disciplinary hearing officer

21   or committee "may deny any witness if it is felt that the testimony would be irrelevant [or]

22   redundant . . . ." As noted above, the video evidence made Davis' testimony redundant.

23   Further, Altheide's own evidence shows he "[w]as asked and does not want a witness."

24   (ECF No. 78 at 190). Accordingly, Altheide fails to show Homan or Wickham violated his

25   right to due process.

26          Further, merely responding to Altheide's grievances is not enough to establish

27   Wickham violated Altheide's right to due process. *See Ramirez v. Galaza*, 334 F.3d 850,

28   860 (9th Cir. 2003) (simply reviewing or processing appeals, without more, cannot create

                                            11

1   liability for prison officials under § 1983) (citing *Mann v. Adams*, 855 F.2d 639, 649 (9th

2   Cir. 1988).   Instead, liability in a § 1983 action arises where a defendant personally

3   participates in a deprivation.   *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

4   Thus, even if there there was a violation of Altheide's due process rights, Wickham did

5   not personally participate in the alleged violations and cannot be held liable..   Moreover,

6   because Altheide was not entitled to have Davis appear as his witness, Altheide has

7   presented no evidence Homan violated his due process rights.   Altheide thus cannot shift

8   his burden on summary judgment to Defendants.   *See In re Oracle Corp.*, 627 F.3d at

9   387.   Accordingly, Altheide fails to show Homan and Wickham violated his right to due

10   process.   Thus, Altheide is not entitled to summary judgment on his Count VII claim.

11   **2.   Counts III, V, and VIII – Altheide's Eighth Amendment Claims**

12   Next, the court will address Altheide's Eighth Amendment claims.   The "treatment

13   a prisoner receives in prison and the conditions under which he is confined are subject to

14   scrutiny under the Eighth Amendment."   *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

15   Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.

16   *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).   However, "[p]rison officials have a duty

17   to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical

18   care, and personal safety."   *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).   When

19   determining whether the conditions of confinement meet the objective prong of the Eighth

20   Amendment analysis, the court must analyze each condition separately to determine

21   whether that specific condition violates the Eighth Amendment. *See Wright v. Rushen*,

22   642 F.2d 1129, 1133 (9th Cir. 1981).

23   As to the subjective prong of the Eighth Amendment analysis, prisoners must

24   establish prison officials' "deliberate indifference" to the unconstitutional conditions of

25   confinement to establish an Eighth Amendment violation.   *Farmer v. Brennan*, 511 U.S.

26   825, 834 (1994).   When considering the conditions of confinement, the court should

27   consider the amount of time to which the prisoner was subjected to the condition.   *Hearns*

28   *v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

1

2

### a. Counts III and VIII – Cruel and Unusual Punishment

### i. Count III – Claim Against Moore

Altheide alleges his evidence shows Moore's placing Altheide in administrative segregation for over a month with no hearing amounted to cruel and unusual punishment. (ECF No. 78 at 2-3). Altheide alleges his psychiatric symptoms were exacerbated by staying in administrative segregation and that Moore acknowledged Altheide's mental health should have been considered prior to his placement. (*Id.*) Defendants argue Altheide was not in segregation at the times he alleges and that any segregation Altheide experienced did not rise to the level of a constitutional deprivation. (ECF No. 85 at 13-15). In reply, Altheide argues Defendants have no material evidence to contest his claim. (ECF No. 90 at 2).

Here, in order to prevail on his claim, Altheide must show that Moore acted with "deliberate indifference" to the terms of Altheide's confinement. *Farmer*, 511 U.S. at 834. However, Defendants' evidence shows Altheide was in close custody as of his November 8, 2017 arrival at ESP and did not receive a different bed assignment until January 10, 2018. (*See* ECF Nos. 85-5 at 2 and 85-3 at 2). Further, Altheide's evidence shows that on December 1, 2017, "per discussion" with Altheide, that he was placed on administrative segregation status and his disciplinary segregation time was suspended. (ECF No. 79 at 3). Taking Altheide's concerns into consideration and ensuring his status was properly changed less than a month after his arrival to ESP does not show the mental state required to establish deliberate indifference. Thus, even if the court were to assume the conditions of Altheide's confinement were unconstitutional, Altheide would still be unable to meet the subjective prong of the Eighth Amendment analysis because he has produced no evidence that would establish the subjective element of his claim. *Farmer*, 511 U.S. at 834. Altheide thus fails to shift his burden on summary judgment to Defendants. *In re Oracle Corp.*, 627 F.3d at 387. Accordingly, Altheide is not entitled to summary judgment on his Count III, cruel and unusual punishment claim.

28

**ii.    Count VIII – Claim Against Reubart**

Altheide alleges his evidence shows Reubart subjected him to cruel and unusual punishment by placing him in administrative segregation without a hearing, exacerbating Altheide's psychiatric symptoms.  (ECF No. 78 at 4-5).  Defendants argue Altheide's allegation of spending a nine-month period in segregation is demonstrably false and that Altheide cannot establish that his segregation amounted to an atypical and significant hardship.  (ECF No. 85 at 14-15).  In reply, Altheide disputes Defendants allegation that he is bipolar.  (ECF No. 90 at 3).  Altheide further argues Defendants have no material evidence to contest his claim.  (*Id.*)  Altheide also argues Moore's status as an administrative segregation caseworker shows that Altheide was placed in administrative segregation.  (*Id.*)

In order to prevail on his claim, Altheide must show Reubart acted with "deliberate indifference" to the terms of Altheide's confinement.  *Farmer*, 511 U.S. at 834.  However, despite Altheide's allegations he was placed in administrative segregation without a hearing, his evidence shows that he had a "Due Process hearing" on April 3, 2019.  (ECF No. 79 at 5).  Moreover, both before and after his arrival at ESP, Altheide's placement was reviewed regularly.  (*See id.*)  Between his October 2, 2017 hearing at HDSP and the filing of his TAC, Altheide's placement was reviewed at least ten (10) times.  (*Id.* at 3-5).  Further, Defendants' evidence shows that Altheide was in close custody as of his November 8, 2017 arrival at ESP and did not receive a different bed assignment until January 10, 2018.  (*See* ECF Nos. 85-5 at 2 and 85-3 at 2).  Accordingly, the undisputed evidence shows Altheide was not placed in administrative segregation without a hearing.  Additionally, Altheide has provided no evidence that would demonstrate Reubart acted with "deliberate indifference" to the terms of Altheide's confinement.  *Farmer*, 511 U.S. at 834.  Thus, even if the court were to assume that the conditions of Altheide's confinement were unconstitutional, Altheide would still be unable to meet the subjective prong of the Eighth Amendment analysis.  *Id.*  Accordingly, Altheide is not entitled to summary judgment on his Count VIII, cruel and unusual punishment claim.

1

### b.    Count V – Excessive Force Against Davis and Gittere

2      The Eighth Amendment's proscription on cruel and unusual punishment forbids

3    prison officials from inflicting "the unnecessary and wanton infliction of pain . . . ."  *Whitley*

4    *v. Albers*, 475 U.S. 312, 319 (1986).  Encompassed within the Eighth Amendment is a bar

5    on the use of excessive force against prisoners.  *See Hudson v. McMillian*, 503 U.S. 1, 7-

6    10 (1992).  Courts in the Ninth Circuit apply a five-part balancing test to excessive force

7    claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the

8    relationship between the need and amount of force; (4) the threat reasonably perceived

9    by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a

10    forceful response.'"  *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*,

11    559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

12      The inmate must demonstrate that officials acted maliciously and sadistically to

13    prevail.  "[W]henever prison officials stand accused of using excessive physical force in

14    violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was

15    applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

16    to cause harm."  *Hudson*, 503 U.S. at 6-7.  As the Ninth Circuit has explained,

17
18
19
20

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison.  When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'"  In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

21
22    *Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at

23    6 and *Whitley,* 475 U.S. at 320).  Thus, the court must be careful when reviewing the

24    factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm

25    as [is] tantamount to a knowing willingness that it occur."  *Hudson*, 503 U.S. at 9.

26    Moreover, there is no need for a showing of serious injury as a result of the force, but the

27    lack of such injury is relevant to the inquiry.  *See id.* at 7-9; *Martinez*, 323 F.3d at 1184;

28    *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

1    Excessive force cases "nearly always requires a jury to sift through disputed factual

2    contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has

3    "held on many occasions that summary judgment or judgment as a matter of law in

4    excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853

5    (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003);

6    *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

7    Here, "the core judicial inquiry is . . . whether force was applied in a good-faith

8    effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

9    *Hudson*, 503 U.S. at 6-7.  Thus, to prevail, Altheide must show Davis and Gittere acted

10   "maliciously and sadistically to cause harm."  *Wood*, 692 F.3d at 1049-50.  Altheide

11   alleges his evidence shows Gittere stepped toward him and initiated physical contact by

12   pushing Altheide.  (ECF No. 78 at 3).  Altheide further alleges Gittere acknowledged

13   pushing someone "would be considered a battery."  (*Id.*)  Defendants argue any force

14   present on the video of the April 1, 2019 altercation between Altheide and Gittere was

15   applied in a good-faith effort to maintain or restore discipline, and that the video further

16   shows Altheide was the aggressor.  (ECF No. 85 at 15-16).  In reply, Altheide argues that

17   he stopped leaning his back against the wall and that he had his fist below his waist while

18   he voiced his disagreement.  (ECF No. 90 at 2).

19   While Altheide alleges Gittere stepped toward him and initiated physical contact

20   by pushing Altheide, Defendants' evidence shows Gittere did not push Altheide.  (*See*

21   ECF No. 93-10 at 1:12:15-1:17:00).  Instead, the video shows that when Gittere entered,

22   Altheide was waiting behind the gate to speak with him.  (*Id.* at 1:12:20).  When the gate

23   opened, Altheide approached Gittere and began a conversation.  (*Id.* at 1:12:22).  During

24   the conversation, Altheide became increasingly visibly agitated and animated, eventually

25   appearing visibly angry.  (*Id.* at 1:12:22-1:13:05).  Eventually, Altheide flinched at Gittere

26   while taking a step toward Gittere, seemingly to intimidate Gittere.  (*Id.* at 1:13:06).  Davis

27   then pushed Altheide back, away from Gittere.  (*Id.* at 1:13:07).  Almost simultaneously,

28   Gittere reached his hand out as well, to keep the distance between he and Altheide.  (*Id.*)

1   Altheide then pushed Gittere and Davis immediately put Altheide in a headlock and took

2   him to the ground. (*Id.* at 1:13:09). Altheide was then secured and restrained for roughly

3   three minutes and twenty (20) seconds. (*Id.* at 1:13:10-1:16:30). Other officers arrived,

4   stood Altheide up, and escorted him back outside the gate. (*Id.* at 1:16:30-1:17.00).

5        Throughout the altercation and the time Altheide was secured and restrained,

6   Altheide was not struck by Davis or Gittere. (*See* ECF No. 93-10 at 1:12:15-1:17:00).

7   Further, Davis immediately removed the headlock he had secured Altheide in the moment

8   Altheide was pinned to the ground. (*Id.*) Moreover, although both Davis and Gittere had

9   their knee on Altheide's back to keep him pinned to the ground at some point during the

10  video, neither Defendant appeared to apply any unnecessary or excessive pressure or

11  engage in any other conduct that could arguably amount to excessive force. (*See id.*)

12  Indeed, both Davis and Gittere appeared to respond calmly and appropriately to the

13  incident, using only minimal force to secure and restrain Altheide until other officers

14  arrived. (*Id.*) The video evidence plainly shows the "force was applied in a good-faith

15  effort to maintain or restore discipline . . . ." *Hudson*, 503 U.S. at 6-7. Conversely,

16  Altheide has offered no evidence Davis or Gittere's conduct on April 1, 2019 was

17  malicious and sadistic or intended to cause harm to Altheide. *See Wood*, 692 F.3d at

18  1049-50. Thus, no reasonable juror could find in favor of Altheide on his Count V claims.

19  Accordingly, Altheide is not entitled to summary judgment on his Count V, excessive force

20  claim against Davis and Gittere.

21        In sum, because Altheide has failed to demonstrate he is entitled to summary

22  judgment on any of his claims, his motion for summary judgment (ECF No. 78) should be

23  denied in its entirety. Next, the court will analyze Defendants' motion for summary

24  judgment (ECF No. 93).

25        **B.    Defendants' Motion for Summary Judgment**

26        Defendants argue they are entitled to summary judgment on all Counts because

27  there is no genuine issue of material fact and alternatively, Defendants are entitled to

28  qualified immunity. (ECF No. 93 at 10-23). Based on the evidence before the court,

1 Defendants have, with authenticated evidence, shown that the record forecloses the

2 possibility of a reasonable jury finding in Altheide's favor. *Celotex*, 477 U.S. at 323.

3 Therefore, Defendants have met their initial burden on summary judgment. Accordingly,

4 the burden shifts to Altheide to "designate specific facts demonstrating the existence of

5 genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387. Altheide is unable to meet

6 his burden.

7       Although Altheide attached a variety of items including grievances, ARs, property

8 forms, and other documents to his pleadings as evidence (*See* ECF Nos. 78 and 79), he

9 has failed to produce any evidence that would create a triable issue of fact as to any of

10 his claims. Therefore, even when viewing all facts and drawing all inferences in the light

11 most favorable to Altheide, the court finds summary judgment should be granted in

12 Defendants' favor on all of Altheide's claims. As with Altheide's motion, the court will first

13 address Defendants' due process arguments, then the court will address Defendants'

14 Eighth Amendment arguments.

15                 **1.**       **Counts I, II, VI and VII – Altheide's Due Process Claims**

16                     **a.**      **Count I – Claim Against Moore and Reubart**

17       Defendants argue they are entitled to summary judgment because Altheide was

18 not housed in a segregation unit until April of 2019. (ECF No. 93 at 11). Further,

19 Defendants argue Altheide's housing was not affected by the change in his status from

20 disciplinary segregation to administrative segregation and his bed history shows he was

21 not in segregation in December of 2017. (*Id.* at 11-12). Moreover, Defendants argue

22 Altheide's segregation was reviewed many times during the time period in question. (*Id.*

23 at 12).

24       In opposition, Altheide alleges Defendants' claims are false, that his evidence

25 shows he was segregated in December of 2017 and that he remained segregated at the

26 time he filed his opposition, August of 2020. (ECF No. 104 at 1). In reply, Defendants

27 argue their evidence shows Altheide was housed in Unit 3 and that he was not placed in

28 segregation until April of 2019. (ECF No. 108 at 2). Moreover, Defendants point to the

1   Declaration of Patricia Hernandez (ECF No. 93-5 at 2) as evidence Altheide was not in

2   administrative segregation in December of 2017.  (*Id.*)

3       Indeed, Defendants' evidence shows Altheide was not placed in Unit 1 until April

4   of 2019.  (ECF No. 93-3 at 3).  Moreover, the evidence Altheide produced shows he

5   received multiple classification hearings, including upon his arrival to ESP.  (*See* ECF No.

6   79 at 3-5).  Further, Altheide's evidence shows he was approved for close custody at ESP

7   as of November 1, 2017.  (ECF No. 104 at 5).  That evidence accords with the evidence

8   provided by Defendants in Hernandez's declaration.  (*See* ECF No. 93-5 at 2).  Thus, the

9   undisputed evidence shows Altheide received multiple due process hearings and was not

10  housed in segregation in December of 2017.  Altheide is thus unable to show Moore and

11  Reubart violated his right to due process.  Accordingly, Defendants are entitled to

12  summary judgment on Altheide's Count I claim.

13      **b.**    **Count II – Claim Against Reubart and Schmidt**

14      Defendants argue Altheide failed to exhaust his administrative remedy regarding

15  his property claim and that Altheide's own evidence shows he received his sweatpants.

16  (ECF No. 93 at 13-15).  Altheide did not oppose Defendants' argument.  (*See* ECF No.

17  104).  First, the court will address Defendants' argument that Altheide failed to exhaust

18  his administrative remedy and second, the court will address the parties' evidence.

19      **i.**    **Exhaustion**

20      The PLRA requires "proper exhaustion" of an inmate's claims.  *Woodford v. Ngo*,

21  548 U.S. 81, 90 (2006).  Proper exhaustion means an inmate must "use all steps the

22  prison holds out, enabling the prison to reach the merits of the issue."  *Griffin v. Arpaio*,

23  557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90).  Failure to exhaust

24  is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  "'[I]t is the prison's

25  requirements, and not the PLRA, that define the boundaries of proper exhaustion.'"

26  *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Jones,* 549 U.S. at 218).  The

27  defendants bear the burden of proving that an available administrative remedy was

28  unexhausted by the inmate.  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

1    Here, the evidence is clear Altheide failed to exhaust his administrative remedy

2    regarding his sweatpants claim.    To exhaust his administrative remedy, Altheide's

3    grievance must receive a second level response in accordance with AR 740.  *See Reyes*,

4    810 F.3d at 657.    However, none of Altheide's grievances regarding his sweatpants

5    advanced to the second level because Altheide declined to cure the defects in those

6    grievances.  (*See* ECF No. 93-9 at 2-18).    Accordingly, Altheide failed to exhaust his

7    administrative remedy regarding his sweatpants.  Further, his failure to exhaust prevents

8    Altheide from bringing a deprivation of property claim.  *See Hudson*, 468 at 530-35.  Thus,

9    Defendants are entitled to summary judgment on Altheide's Count II, property deprivation

10    claim.

11                                    **ii.      Due Process**

12    Even if Altheide had successfully exhausted his administrative remedy, his claims

13    would still fail.  No material dispute of fact exists as to Altheide's Count II because the

14    undisputed evidence shows Altheide received his sweatpants.  (*See* ECF Nos. 79 at 71

15    and 85-8 at 2-3).  Altheide has failed to provide any evidence to the contrary.  Thus, no

16    reasonable juror could find in favor of Altheide.  Accordingly, Defendants are entitled to

17    summary judgment on Altheide's Count II claim.

18                     **c.      Count VI – Claim Against Gittere and Reubart**

19    Defendants argue Altheide's due process rights were not violated when his April

20    3, 2019 disciplinary hearing failed to include Defendant Davis as a witness.  (ECF No. 93

21    at 11).  Defendants further argue that pursuant to AR 707.01(3)(C)(10)(a), Altheide was

22    not entitled to a "redundant" witness.  (*Id.*)  Altheide did not oppose Defendants' argument.

23    (*See* ECF No. 104).  In reply, Defendants argue Altheide did not have a constitutional

24    right to have Davis present at his hearing.  (ECF No. 108 at 2-3).  Moreover, Defendants

25    argue Altheide has no constitutional right to cross-examine witnesses in a prison

26    disciplinary hearing.  (*Id.* at 3) (citing *Wolff*, 418 U.S. at 567-68).

27    Here, AR 707.01(3)(C)(10)(a) is clear that the disciplinary hearing officer or

28    committee "may deny any witness if it is felt that the testimony would be irrelevant [or]

1    redundant . . . ."  As noted above, the video evidence made Davis' testimony redundant.

2    Further, Defendants correctly note that Altheide has no constitutional right to cross-

3    examine witnesses in a prison disciplinary hearing.  *See Wolff*, 418 U.S. at 566-67

4    (because "[t]here is much play in the joints of the Due Process Clause", prison officials

5    must have the necessary discretion to reasonably restrict witnesses at inmate disciplinary

6    hearings without violating an inmate's due process rights).

7        Moreover, although AR 707.01(3)(C)(10)(d) states "the testimony of the charging

8    employee must be permitted at all Disciplinary Hearings . . . if the inmate requests the

9    charging employee as a witness," that AR cannot be read to operate outside of the

10   regulatory framework of AR 707.  Accordingly, AR 707.01(3)(C)(10)(d) cannot be properly

11   read as an exception to AR 707.01(3)(C)(10)(a).  The regulation is clear that under AR

12   707.01(3)(C)(10)(d), "the testimony of the charging employee must be permitted at all

13   Disciplinary Hearings . . . if the inmate requests the charging employee as a witness",

14   provided that witness will not offer "testimony would be irrelevant [or] redundant . . . ."

15   under AR 707.01(3)(C)(10)(a).  Thus, the undisputed evidence shows Altheide was not

16   entitled to have Davis present as a witness at his April 3, 2019 disciplinary hearing.

17   Therefore, Altheide has provided no evidence Gittere and Reubart violated his right to

18   due process by failing to provide Davis as a witness.  *See Wolff*, 418 U.S. at 566-67.

19   Accordingly, Defendants are entitled to summary judgment on Count VI.

20            **d.    Count VII – Claim Against Homan and Wickham**

21        Defendants argue Altheide identified no constitutionally infirm procedures in his

22   May 2, 2019 hearing and that Altheide further declined a request to have witnesses

23   present. (ECF No. 93 at 18-19).  Defendants also argue the procedures afforded Altheide

24   at his hearing satisfied the requirements of due process.  (*Id.* at 19).  In opposition,

25   Altheide alleges he did in fact request Davis be a witness at his hearing and that

26   Defendants are using false paperwork to present their defenses.  (ECF No. 104 at 2).  In

27   reply, Defendants argue Altheide has failed to identify any particular fraud or error and

28   thus cannot establish a genuine dispute of fact on that basis.  (ECF No. 108 at 2).

1    As discussed above, merely responding to Altheide's grievances is not enough to

2    establish Wickham violated Altheide's right to due process.  *See Ramirez*, 334 F.3d at

3    860.  Instead, liability in a § 1983 action arises where a defendant personally participates

4    in a deprivation.  *See Taylor*, 880 F.2d at 1045.  Wickham did not personally participate

5    in the alleged violations of Altheide's due process rights.   Moreover, Altheide has

6    presented no evidence Homan violated any of Altheide's constitutional rights.   Further,

7    the evidence shows Altheide "[w]as asked and does not want a witness" at his March 2,

8    2019 disciplinary hearing.  (ECF No. 78 at 190).  Accordingly, no material dispute of fact

9    exists as to Altheide's Count VII, and Defendants are entitled to summary judgment on

10   that Count.

11           **2.        Counts III, V, and VIII – Altheide's Eighth Amendment Claims**

12                   **a.        Cruel and Unusual Punishment**

13                           **i.        Count III – Claim Against Moore**

14    Defendants argue Altheide's Count II claim fails as a matter of law because he

15   was not in administrative segregation at the time Altheide alleges his rights were violated.

16   (ECF No 93 at 15).   Thus, Defendants argue, no material dispute exists as to Count III.

17   (*Id.* at 16).   In opposition, Altheide argues he was in administrative segregation and that

18   Defendants are using false paperwork to present their defenses.  (ECF No. 104 at 1-2).

19   In reply, Defendants argue Altheide was not in administrative segregation in December

20   of 2017 and his housing assignment did not change until after his alleged assault on

21   Gittere.  (ECF No. 108 at 2).

22           Altheide has presented no evidence he was in administrative segregation in

23   December of 2017.   Instead, Altheide's evidence shows he was approved for close

24   custody at ESP as of November 1, 2017, in accordance with the affidavit produced by

25   Defendants.  (*See* ECF Nos. 104 at 5 and 93-5 at 2, respectively).  Moreover, Defendants'

26   evidence shows Altheide was not placed in Unit 1 until April of 2019.  (ECF No. 93-3 at

27   3).  Thus, the undisputed evidence shows Altheide was not in administrative segregation

28   until April of 2019.  Moreover, Altheide has not provided any evidence that would make

1   the subjective showing required under an Eighth Amendment cruel and unusual

2   punishment analysis.  *See Farmer*, 511 U.S. at 834.  Accordingly, Altheide is unable to

3   establish a dispute of material fact as it relates to Count VII.  Therefore, Defendants are

4   entitled to summary judgment on Count VII.

5                              **ii.    Count VIII – Claim Against Reubart**

6          Defendants argue Altheide's allegations he was in ad-seg for nine months are

7   demonstrably false and that the administrative segregation he experienced beginning in

8   April of 2019 was not an atypical and significant hardship for the purposes of the Eighth

9   Amendment.  (ECF No. 93 at 15-17).  In opposition, Altheide claims Defendants made no

10  argument regarding Count VIII and requests the court direct a verdict in his favor on that

11  Count.  (ECF No. 104 at 2).  Defendants did not reply to that argument.  (*See* ECF No.

12  108).

13         As noted above, Altheide has provided no evidence he was in administrative

14  segregation at any time prior to April of 2019 and the undisputed evidence shows he was

15  not in administrative segregation, as it relates to this dispute, at any time prior to April of

16  2019.   Moreover, to prevail on his claim, Altheide must show Reubart acted with

17  "deliberate indifference" to the terms of Altheide's confinement.  *Farmer*, 511 U.S. at 834.

18  Altheide has failed to produce any evidence that would meet the subjective prong of the

19  Eighth Amendment cruel and unusual punishment analysis.  *See Farmer*, 511 U.S. at

20  834.  Accordingly, no material dispute of fact exists as to Altheide's Count VIII, and

21  Defendants are entitled to summary judgment on that Count.

22                     **b.    Count V – Excessive Force Against Davis and Gittere**

23         Defendants argue Gittere acted in self-defense when he was attacked by Altheide

24  in accordance with AR 405.03(1).  (ECF No. 93 at 17-18).  Defendants further argue any

25  force Davis and Gittere applied was in a good-faith effort to restore discipline and that the

26  amount of force used was reasonable.   (*Id.*)   Altheide did not oppose Defendants'

27  argument and Defendants did not reply.  (*See* ECF Nos. 104 and 108, respectively).

28

As discussed above, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.  Thus, to prevail, Altheide must show Davis and Gittere acted "maliciously and sadistically to cause harm." *Wood*, 692 F.3d at 1049-50.  While Altheide alleges Gittere stepped toward him and initiated physical contact by pushing Altheide, Defendants' evidence shows Gittere did not push Altheide.  (*See* ECF No. 93-10 at 1:12:15-1:17:00).  Further, throughout the altercation and the time Altheide was secured and restrained, neither Defendant appeared to apply any unnecessary or excessive pressure or engage in any other conduct that could arguably amount to excessive force.  (*See id.*)  Indeed, the video evidence plainly shows the "force was applied in a good-faith effort to maintain or restore discipline . . . ." *Hudson*, 503 U.S. at 6-7.

Conversely, Altheide has offered no evidence Davis or Gittere's conduct on April 1, 2019 was malicious and sadistic or intended to cause harm to Altheide.  *See Wood*, 692 F.3d at 1049-50.  Accordingly, Altheide is unable to establish a dispute of material fact as it relates to Count V.  Therefore, Defendants are entitled to summary judgment on Count V.  In sum, because Defendants are entitled to summary judgment on all of Altheide's claims, their motion for summary judgment (ECF No. 93) should be granted in its entirety.[5]

**IV.   CONCLUSION**

For good cause appearing and for the reasons stated above, the court recommends Altheide's motion for summary judgment (ECF No. 78) be denied and Defendants' motion for summary judgment (ECF No. 93) be granted.

The parties are advised:

---

[5]   Where the court determines a plaintiff's allegations fail to show a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Here, Altheide is unable to establish a violation of his rights under the United States Constitution.  Accordingly, there is no need to further discuss qualified immunity.

1     1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

2   Practice, the parties may file specific written objections to this Report and

3   Recommendation within fourteen days of receipt.  These objections should be entitled

4   "Objections to Magistrate Judge's Report and Recommendation" and should be

5   accompanied by points and authorities for consideration by the District Court.

6     2.    This Report and Recommendation is not an appealable order and any

7   notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the

8   District Court's judgment.

9   **V.    RECOMMENDATION**

10     **IT IS THEREFORE RECOMMENDED** that Altheide's motion for summary

11   judgment (ECF No. 78) be **DENIED**;

12     **IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment

13   (ECF No. 93) be **GRANTED**;

14     **IT IS FURTHER RECOMMENDED** that Altheide's motion to exclude video (ECF

15   No. 92), motion to dismiss Defendants' motion for summary judgment (ECF No. 99),

16   motion for an order to produce (ECF No. 105), and three motions of notice (ECF Nos.

17   110, 111, and 115) be **DENIED** as moot; and

18     **IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT**

19   accordingly.

20

21   **DATED**:  September 21, 2020

22

23   _____
     **UNITED STATES MAGISTRATE JUDGE**

24

25

26

27

28